UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Keith McGuire,                                                  Case No. 1:23-dp-20023

              Plaintiff,

       v.                                                      MEMORANDUM OPINION
                                                                   AND ORDER

KB Orthopedics, Inc., *et al.*,

              Defendants.


## I.  INTRODUCTION AND BACKGROUND

In 2006, Plaintiff Keith McGuire underwent hip replacement surgery on his left hip,
receiving a DePuy ASR XL Acetabular Hip System.  (Doc. No. 1-1 at 23).  Two years later, McGuire
underwent surgery on his right hip and received a DePuy Pinnacle Acetabular Cup System.  (*Id.* at
24).  McGuire alleges he was forced to undergo explantation surgery of the ASR device in 2022
because he was suffering from heavy metal poisoning caused by the device.  (*Id.*).

While the Pinnacle device remains implanted, McGuire alleges he has been told he may need
explantation surgery on that hip as well.  (*Id.*).  On March 8, 2023, McGuire filed suit in the Fourth
Judicial District Court for Missoula County, Montana, asserting claims for products liability, breach
of warranties, fraud, negligence, and breach of the Montana Consumer Protection Act against six
Defendants: KB Orthopedics, Karl Buhr, Medical Device Business Services, Inc., DePuy Synthes
Sales, Inc., Johnson & Johnson Services, Inc., and Johnson & Johnson, Inc. (*See id.*).

Defendants removed this case to the United States District Court for the District of Montana.  (Doc. No. 1).  McGuire filed a timely motion to remand the case to state court and for an award of attorney fees associated with the allegedly improper removal.  (Doc. No. 3).  Shortly after McGuire filed his motion, the Judicial Panel on Multidistrict Litigation transferred this case into MDL No. 2197, In re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation. (Doc. No. 11).  Defendants then filed a brief in opposition to the motion to remand.  (Doc. No. 19). McGuire filed a brief in reply.  (Doc. No. 20).  After obtaining leave, Defendants filed a sur-reply brief.  (Doc. No. 23).

For the reasons stated below, I deny the motion for attorney fees and grant the motion to remand.

## II.    DISCUSSION

McGuire moved to remand this case for lack of subject matter jurisdiction.  Defendants removed this case based upon diversity jurisdiction.  (Doc. No. 1 at 3).  A federal court has subject matter jurisdiction over a case involving only state-law claims if the opposing parties are citizens of different states.  28 U.S.C. § 1332(a).  McGuire is a Montana resident, as is one of the Defendants, KB Orthopedics.  (Doc. No. 1-1 at 1, 5).  The parties' dispute centers on KB Orthopedics – McGuire contends the presence of that Defendants defeats diversity jurisdiction while Defendants argue KB Orthopedics was fraudulently joined and its citizenship should be disregarded. Defendants also argue that McGuire's claims against KB Orthopedics are barred by the doctrine of impossibility preemption.  I conclude Defendants' arguments are not persuasive and grant the motion to remand.

### A.    IMPOSSIBILITY PREEMPTION

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law."  *Hillsborough Cnty.,*

*Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)).  "[S]tate law is preempted under the Supremacy Clause in three circumstances: (1) when Congress has clearly expressed an intention to do so ('express preemption'); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ('field preemption'); and (3) when a state law conflicts with federal law ('conflict preemption')."  *Coll. Loan Corp. v. SLM Corp., a Delaware Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005) (citation omitted).

"'Conflict preemption' exists where (1) 'it is impossible for a private party to comply with both state and federal law,' [known as 'impossibility preemption'] and (2) the state law is 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress [also known as 'obstacle preemption'].'"  *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 294 (6th Cir. 2015) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000)).  Where, as here, "federal law does not expressly prohibit the defendant from complying with state law, [a court must] determine whether the defendant has presented 'clear evidence' that the FDA would have prohibited the defendant from taking the necessary steps under state law."  *Yates*, 808 F.3d at 294 (citing *Wyeth v. Levine*, 555 U.S. 555, 571 (2009)).

Defendants argue that "[b]ecause KB Orthopedics is not the manufacturer of the ASR or Pinnacle, federal law prohibits it from altering the design or warnings of those products.  Claims that are premised on an alleged failure to alter the design or warnings are therefore preempted."  (Doc. No. 19 at 13).

As McGuire notes, the United States Court of Appeals for the Fifth Circuit previously held that the doctrine of obstacle preemption does not bar a plaintiff's state-law design-defect claims involving Johnson & Johnson's Pinnacle Hip Implant system, after concluding the defendants failed to show how the plaintiff's theory of liability would "obstruct[] the FDA's regulatory objectives."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 771 (5th Cir. 2018).

Defendants offer no explanation as to how they could establish in this case that it was impossible for KB Orthopedics to comply with both state and federal law when the exact same argument previously failed to clear the much lower bar of obstacle preemption.

Defendants have failed to offer "clear evidence" that federal law would have prohibited them from meeting the requirements of Montana law and therefore they failed to meet their burden as to impossibility preemption.

### B.    FRAUDULENT JOINER

Defendants next argue that removal was proper because McGuire has not stated a plausible claim for relief against KB Orthopedics and therefore I "should disregard KB Orthopedics' citizenship [for diversity jurisdiction purposes] under the fraudulent joinder doctrine."  (Doc. No. 19 at 18).

In general, a defendant in an action brought in state court may remove the case to federal court if "the district courts of the United States have original jurisdiction" over that action.  28 U.S.C. § 1441(a).  "In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed."  *Jerome–Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).  Conversely, "[a] district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse."  *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome–Duncan*, 176 F.3d at 907).

If a federal district court lacks subject matter jurisdiction over a removed case, "the case shall be remanded" to the state court from which it was removed.  28 U.S.C. § 1447(c); *see Saginaw Housing Comm'n*, 576 F.3d at 624.  Defendants rely on a "judicially-created . . . exception to the requirement of complete diversity" known as fraudulent joinder.  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th

Cir. 1999) (citations and internal quotation marks omitted); (*see* Doc. No. 25 at 6-7; Doc. No. 22 at 8).

Absent another basis for subject matter jurisdiction, a defendant in a case with incomplete diversity "may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan*, 176 F.3d at 907) (internal quotation marks omitted). "A defendant is fraudulently joined if it is 'clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.'" *Casias,* 695 F.3d at 432-33 (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

In making this determination, courts "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias,* 695 F.3d at 433 (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011)). This means I must "resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 49 (quoting *Alexander*, 13 F.3d at 949).

When appropriate, a court may "pierce the pleading" and consider evidence beyond the pleadings, but only "for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433 (quoting *Walker*, 443 F. App'x at 955–56). The ultimate inquiry is "whether there is 'a colorable basis for predicting that a plaintiff may recover against [a defendant].'" *Casias*, 695 F.3d at 433 (quoting *Coyne*, 183 F.3d at 493). The removing party, who bears the burden of establishing the propriety of removal, likewise bears the burden of showing that a defendant was fraudulently joined. *Casias*, 695 F.3d at 433; *see also Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. Jan. 22, 2013) (table decision) ("The combination of the 'colorable' standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle.").

Montana law imposes strict liability on sellers of defective products:

> A person who sells a product in a defective condition that is unreasonably dangerous to a user or consumer . . . is liable for physical harm caused by the product to the ultimate user or consumer . . . if:
>
> > (a) the seller is engaged in the business of selling the product; and
> >
> > (b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Mont. Code Ann. § 27-1-719(1). This provision applies even if "the user or consumer did not buy the product from or enter into any contractual relation with the seller." Mont. Code Ann. § 27-1-719(2)(b). A "seller" is "a manufacturer, wholesaler, or retailer." Mont. Code Ann. § 27-1-719(9)(d).

Prior to the Montana legislature's enactment of § 27-1-719, the Supreme Court of Montana adopted the doctrine of strict liability in design-defect cases. *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, 513 P.2d 268, 272-74 (Mont. 1973) (adopting substantially-similar statement of doctrine as defined in 2 Restatement of Torts 2d § 402A as justified by public policy considerations, including "this responsibility should also be placed upon the retailer and wholesaler of the defective product in order that they may act as the conduit through which liability may flow to reach the manufacturer, where ultimate responsibility lies"). In a complaint alleging strict liability, "a plaintiff need only sue that person or enterprise in the chain of distribution of a given product of which he has knowledge or with which he has had contact." *Kelly v. Gen. Motors Corp.*, 487 F. Supp. 1041, 1047 (D. Mont. 1980); *see also Burr v. Johnson & Johnson*, No. CV 23-35-M-DWM, 2023 WL 4235850, at *3 (D. Mont. June 28, 2023).

Defendants assert McGuire does not have a plausible strict liability claim against KB Orthopedics because that company "did not sell the ASR or Pinnacle Cup System." (Doc. No. 19 at 20). They go on to cite to various excerpts of Buhr's affidavit, including Buhr's averment that KB Orthopedics "did not purchase the products from DePuy[,] nor did it take title to or obtain an ownership interest in the products," and Buhr's disclaimers that KB Orthopedics played no role in

6

researching, developing, manufacturing, labeling, or packaging DePuy's products. (Doc. No. 1-3 at 2-3).

Defendants apparently seek to create the impression that KB Orthopedics was no more than a deliveryman, akin to UPS or FedEx. But Buhr's affidavit itself dispels that analogy, as he admits that his role as an "independent contractor" working for Defendants gained him access to "the surgical suite" during the implantation of DePuy products – a location certainly inaccessible to any ordinary delivery service. (*Id.* at 2, 3).

Moreover, several federal courts have rejected Defendants' contention that a "distributor" is different in kind than a "manufacturer, wholesaler, or retailer" and therefore is excluded from the scope of § 27-1-719. In *Murphy v. KB Orthopedics, Inc.*, the court concluded the defendants fell "short of demonstrating that Plaintiff has no reasonable basis of recovery under [Montana] law against Defendant KB." *Murphy v. KB Orthopedics, Inc.*, No. 3:21-CV-01865-K, 2022 WL 22354863, at *3 (N.D. Tex. Nov. 18, 2022). The United States District Court for the District of Montana reached the same conclusion. *Ashworth v. KB Orthopedics, Inc.*, No. CV 22-161-M-DLC-KLD, 2023 WL 6797285, at *4 (D. Mont. July 17, 2023) ("Montana law does not definitively establish that parties engaged in distributing defective and unreasonably dangerous products cannot be held strictly liable under the Montana Code Annotated § 27-1-719(9)(d) definition.").

Defendants are dismissive of both decisions, arguing the *Murphy* court "misapplied applicable law," and that the *Ashworth* decision is of "limited precedential value" because it was issued by a United States Magistrate Judge as a report and recommendation. (Doc. No. 23 at 1-2). But Defendants' actions reveal more than their arguments. It is true Defendants had no recourse in *Murphy*, as "a remand for lack of subject matter jurisdiction is typically immune from review" through an appeal. *Am. Mar. Officers v. Marine Engineers Beneficial Ass'n, Dist. No. 1*, 503 F.3d 532, 535 (6th Cir. 2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

The same was not true of *Ashworth*, as 28 U.S.C. § 636(b)(1)(C) requires a district court to conduct a de novo review of a Magistrate Judge's findings upon the objection of one of the parties. But Defendants made no such objections, and the district court adopted the report and recommendation without objection. *Ashworth v. KB Orthopedics, Inc.*, No. CV 22-161-M-DLC, 2023 WL 6793964, at *1 (D. Mont. Oct. 13, 2023)

It was Defendants' burden to demonstrate KB Orthopedics was fraudulently joined. *Casias*, 695 F.3d at 433. They did not carry this burden. I agree with the *Ashworth* court's analysis and conclude, "absent clear Montana law establishing that distributors such as KB Orthopedics can never be held strictly liable under Montana Code Annotated § 27-1-719, and construing that ambiguity in favor of [the plaintiff]," that KB Orthopedics was not fraudulently joined in this case. *Ashworth*, 2023 WL 6797285, at *4. Therefore, I grant McGuire's motion to remand.

## C.  ATTORNEY FEES

McGuire also seeks attorney fees and costs associated with Defendants' removal of this action, arguing this case is a further example in what McGuire describes as a "pattern of fraudulent removals" by Defendants based upon the fraudulent joinder doctrine. (Doc. No. 4 at 30). McGuire cites to six other cases over a period of eleven years in which courts have rejected Defendants' fraudulent-joinder arguments. (*Id.* at 29 n.2, 30).

Federal law permits a district court remanding a case to state court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

McGuire's argument has some appeal, as "the precedent governing removal in fraudulent joinder actions is well settled[,] . . . [requiring that] all disputed questions of fact and any ambiguities

in the governing state law are resolved in favor of the party seeking remand." *Kent State Univ. Bd. of Trustees*, 512 F. App'x at 491 (citing *Coyne*, 183 F.3d at 493).  The absence of <u>any</u> caselaw from a Montana court suggesting that Defendants' "distributor" theory had merit should have given Defendants pause in removing this case.

But fraudulent joinder was not the only basis for removal.  Defendants also asserted removal was proper pursuant to the doctrine of impossibility preemption.  McGuire has not offered any argument explaining why Defendants' preemption argument does not constitute an objectively reasonable basis for removal.  (*See* Doc. No. 4 at 29-31).  Thus, McGuire has not met his burden under § 1447(c).  *See Warthman v. Genoa Twp. Bd. of Tr.*, 549 F.3d 1055, 1061 (6th Cir. 2008) (noting plaintiff "must first establish that the . . . removal attempt was not objectively reasonable" before district court can award costs and attorney fees).  Therefore, I deny McGuire's motion for fees and costs.

### III.  CONCLUSION

For the reasons stated above, I conclude this court lacks subject matter jurisdiction over McGuire's complaint and grant his motion to remand.  (Doc. No. 3).  I deny the motion to the extent it seeks attorney fees associated with the removal and subsequent motion to remand.

In accordance with Rule 10.1(b), R.P.J.P.M.L., I respectfully suggest a remand of this action pursuant to 28 U.S.C. § 1407, to the United States District Court for the District of Montana, the appropriate transferor court, with instructions to remand the case to the Fourth Judicial District Court for Missoula County, Montana.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
